IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Michael Le, | ) Civil Action No. 2:09-1929-RMG-BHH |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Hoover Motors Holding Company, Inc., | ) |
| (f/k/a Hoover Chrysler Jeep, Inc.), | ) |
| Defendant. | ) |

This matter is before the Court on the defendant's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. 40]. The plaintiff has pled claims for race discrimination pursuant to Title VII of the Civil Rights Act of 1964 (as amended) ("Title VII") and 42 U.S.C. § 1981; age discrimination under the Age Discrimination in Employment Act ("ADEA"); and breach of contract, under state law. More specifically, it appears that the plaintiff has meant to plead claims for discriminatory discharge, other disparate treatment, hostile work environment, and retaliation, pursuant to both Title VII and the ADEA. (See generally Compl. ¶¶ 18, 23, 29, 37, 43.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**BACKGROUND**

It is undisputed that the defendant employed the plaintiff as an automotive technician from 2002 to 2007 and that the plaintiff is Chinese-Vietnamese. The technicians were required to take monthly computerized exams to stay updated on new vehicles. (Pl. Dep. at 9.) The plaintiff contends that he requested additional training but was denied it, without explanation, and, further, that such denial resulted in a loss of pay. *Id.* at 13. The plaintiff alleges to have repeatedly complained about not getting sufficient work. *Id.* at 38-39.

More problematically, the plaintiff contends that he was harassed daily on account of his race and national origin, and that technicians, service writers, and the service manager would call him "chinaman," "fucking Chinese," and say things like, "trying to get the Chinese to get out of here." *Id.* at 49.[1] They would also allegedly call the plaintiff an Iranian technician. *Id.* A coworker has testified, "They told us that we were nothing. We can't be anything better than they are. They will say, what do you know? You're just a Chinaman. They always used to call him - - what do you know? You're just a Chinaman. You can't fix it. Why don't you just quit? Pack your things and go." (Rahbar Dep. at 13.) They would also allegedly taunt, "[L]et the Chinaman do it," and call him Bruce Lee. *Id.* at 17, 19.

---

[1] As far as the Court can tell, this testimony does not appear on page 49 of the plaintiff's deposition, as he represents, or anywhere else in the abridged transcript submitted to the Court. The defendant, however, does not contest that the testimony, in fact, exists. Accordingly, the undersigned will assume that the plaintiff gave such testimony, although it has not been presented here.

2

The plaintiff claims that he complained repeatedly to management about the harassment and expressed to everyone making the comments that they were unwelcome and he did not want to be called names. (Pl. Dep. at 53-55.) The plaintiff complains that, on December 4, 2007, the defendant wrongfully discharged him on the basis of his age (47), race, national origin and color and in retaliation for his complaints of discrimination and wrongdoing.

## STANDARD OF REVIEW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The defendant has moved for summary judgment on all of the plaintiff's claims for age discrimination and for breach of contract. In regards to the plaintiff's Title VII claims for race discrimination, however, the defendant only seeks judgment for the discriminatory discharge cause of action and not the hostile work environment one. To the extent the plaintiff's Complaint, contains, and it is the plaintiff's intent to prosecute, claims for retaliation pursuant to Title VII, they have not been implicated by the present motion and the Court would not consider their sufficiency now.

4

I.   **Statute of Limitations**

As an initial matter, the defendant first argues that any claims of the plaintiff, based on conduct of the defendant arising prior to May 8, 2007,[2] are time barred and should be dismissed.

A plaintiff must first exhaust his administrative remedies by bringing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007) (Title VII); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (Title VII); *Fisher v. Securitas Sec. Serv. USA Inc.*, 2010 WL 568234, at *3 (D.S.C. Feb. 12, 2010) (Title VII and ADEA claims); *Strickland v. Baker*, 2010 WL 146816, at **3-4 (D.S.C. Jan. 11, 2010) (Title VII and ADA claims). Title VII and the ADEA establish two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA). The standard limitations period for filing a charge is 180 days after the alleged unlawful employment practice. *Id*. The limitations period is extended to 300 days, however, when state law proscribes the alleged employment practice and the

---

[2] There is some inconsistency in the parties' representation of relevant dates. The defendant initially contended that the plaintiff filed his charge of discrimination on February 14, 2008 and, therefore, discrimination occurring prior to April 20, 2007 should be time barred. (Def. Mem. Supp. Summ. J. at 3.) The plaintiff, however, claimed that he filed his Charge, on March 6, 2008. (Pl. Resp. at 5.) The defendant subsequently represented that the Charge was filed March 8, 2008 and argued that discrimination prior to May 8, 2007 should, therefore, be time barred. The charging document does not appear to be anywhere in the record, either in association with the present briefing or prior Complaint. The Court need not resolve it, however, since, as will be discussed, the Court declines to recommend that the statute of limitations argument prohibits consideration of facts outside the 300-day window.

charge has initially been filed with a state or local deferral agency. *See* 42 U.S.C. §2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). Claims which are based upon discriminatory acts which fall outside this 300 day period are time barred. *See Gilliam v. South Carolina Dept. Of Juvenile Justice,* 474 F.3d 134, 139 (4th Cir. 2007); *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *Mickel v. S.C. State Employment Serv.*, 377 F.2d 239, 242 (4th Cir. 1967).

The plaintiff does not dispute it. Instead he makes a generic appeal, based on the *dissent* in the United State Supreme Court decision in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618 (U.S. 2007), that "[w]here . . . an employer adopts a rule or decision with an unlawful discriminatory motive, each application of that rule or decision is a new violation of the law." *Id.* at 653. (citation and quotation omitted). Ironically, it is this precise principle of law, although at odds with the particular holding of the majority opinion in *Ledbetter* (not relevant here), which undermines the plaintiff's position. Because each act, rooted in unlawful discriminatory motive, constitutes a new violation, plaintiffs may not daisy-chain together discrete incidents in order to reach back and include discriminatory conduct that occurred outside the 300-day window. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).

The "continuing violation doctrine" constitutes an exception. Under the doctrine, a hostile work environment claim "may appropriately extend . . . to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well." *White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 293 (4th

6

Cir. 2004). The United States Supreme Court has limited the applicability of the doctrine to hostile work environment claims, which are based upon the cumulative affect of individual acts that may not themselves be actionable. See *Morgan*, 536 U.S. at 115; *Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134, 140-41 (4th Cir. 2007). Because, the plaintiff has pled a Title VII hostile work environment claim, which has not been implicated by the present motion, it would be improvident to rule that any conduct of the defendant, prior to some date, is necessarily out of the bounds of consideration, when it may be reasonably viewed, as a matter of both law and fact, as a part of an ongoing and unlawful act of the defendant.

Either on some subsequent motion for either summary judgment or directed verdict, the Court might have occasion to make a more precise ruling. But, it cannot here. The continuing violation doctrine makes relevant, to the plaintiff's claim for hostile work environment, acts occurring outside the 300-day window. Because the Court recommends dismissal of the remaining Title VII and ADEA claims on distinct grounds, there is no reason to consider the effect of the statute of limitations on those.

**II.    Age Discrimination Claim**s

The defendant next contends that the plaintiff has not brought forward any evidence in support of his Age Discrimination claims, whether for discriminatory discharge, other disparate treatment, retaliation, or hostile work environment. Among other arguments, the defendant contends that the plaintiff cannot create any issues of fact concerning his *prima facie* case, because after the termination of his employment,

7

the plaintiff's position was filled by an *older* individual.  *See Warch v. Ohio Casualty Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).  Although the Court would be inclined to agree, it need not reach the merits of any iteration of the ADEA claims, whether disparate treatment or retaliation or hostile environment.  The plaintiff has made no rejoinder whatsoever and, therefore, is considered as having waived the claims.  The plaintiff has certainly not met his burden under Federal Rule of Civil Procedure 56 to come forward with admissible evidence in response, demonstrating the presence of issues of fact for resolution at trial.

The plaintiff was not without occasion or incentive to do so; the defendant made substantial showing regarding any putative claims for age discrimination and why they should not continue.  (Def. Mem. Supp. Summ. J. at 3-8.)  The plaintiff simply made no response.  (See generally Pl. Resp.)

## III.     Race Discrimination

The defendant has also moved for summary judgment regarding the plaintiff's claim for discriminatory discharge, allegedly done on account of his race.  The defendant again contends that the plaintiff cannot make out any *prima facie* case of discrimination.

As the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added).  A plaintiff can

survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff, here, has not expressly elected. But, he has not proffered any direct evidence. In the employment context, direct evidence must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510 (4th Cir. 2006). While he has produced evidence reflecting a discriminatory attitude, the same evidence does not relate, in any direct way, to the decision to terminate the plaintiff's employment.[3] (See Pl. Dep. at 49, 10; Rahbar Dep. at 13, 17-19.) Accordingly, the Court would consider his claims in light of the *McDonnell*

---

[3] A few of the offered statements seem to imply that certain individuals were trying to make the plaintiff leave. The statements, however, do not, in fact, say anything specifically or directly about the plaintiff's actual discharge and the plaintiff has not attempted to attribute the statements in question to any individuals with authority to fire him. For all these reasons, the Court does not consider them direct.

9

*Douglas* proof scheme only. As stated, the plaintiff does not contend that it should be any other way or, more precisely, any way at all.

To the extent employed, *McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough . . . to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828

(4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### A.  *Prima Facie* Case

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir.2002). More recently, the Fourth Circuit has affirmed a more precise formulation of the fourth element: that the "position remained open or was filled by a similarly qualified individual outside the protected class." *See Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)). The defendant contends that the plaintiff cannot meet its demands.

The defendant argues that a Barry Bumford, who replaced the plaintiff, was not merely comparable in qualification but, in fact, superior, such that the fourth element is not satisfied. (Roberts Aff. ¶ 5 and Ex. 1 thereto.) The defendant emphasizes that Automotive technicians are scored by the manufacturer in a number of proficiencies. *Id.* Scores range from 1 to 4, with one being the lowest rating. *Id.* Apparently, the highest

rating achieved by the plaintiff in any category was a rating of two. *Id*. In one category, the plaintiff achieved the lowest possible rating. *Id*. In contrast, the defendant puts forward some evidence that Bumford has achieved the top rating in a number of categories, and does not have the lowest rating in any category. *Id.*

This is not a particularly strong showing. But, the Court is mindful to assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question.[4] *See Heiko v. Colombo Savings Bank*, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir.2005). The defendant represents that the relative performance of the plaintiff and his replacement, as measured by these scores, is relevant and indicative of a notable differential in qualification. The effect of the defendant's presentation is reinforced, here, where the plaintiff has made no response whatsoever to the particulars of *McDonnell Douglas*, generally, or, specifically, regarding the qualifications of the individual who replaced him. (Pl. Resp. at 6-8.) Instead, the plaintiff has just reemphasized the many discriminatory comments made to him. As discussed, short of rising to the quality and nature of direct evidence -- which they do not, such remarks, alone, are insufficient to survive summary judgment.

The Court is constrained to grant it as to the plaintiff's claim for Title VII discriminatory discharge. For all these same reasons, and because they are similarly

---

[4] Most of the Fourth Circuit's instruction in this regard relates to the analysis performed at the pretext stage, but it is of some aid here. *See Heiko*, F.S.B., 434 F.3d at 259.

considered, the plaintiff's 42 U.S.C. § 1981 claim, must also fail. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985).

## IV.   Breach of Contract

The defendant has also moved for dismissal of the plaintiff's claim for breach of contract. The Court need not entertain it long. The plaintiff has made no serious effort in defense of the cause. Without submission, citation, or other recourse to any policy or handbook of the defendant, either on motion or in the plaintiff's Complaint, the plaintiff baldly contends that it is some issue of fact for a jury to resolve, whether or not this purported, yet unidentified and undiscussed, handbook created a contract that the defendant somehow breached.

South Carolina law provides that "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). Under certain circumstances, however, an at-will employment arrangement can be modified by an oral promise, *see Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999), or by "[m]andatory, progressive discipline procedures . . .," set out in a handbook or policy, for instance. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005).

The plaintiff has identified none. He has not explained what policy upon which he relies, how it was mandatory in kind, or how the defendant, in its conduct, might have breached the policy's or promise's terms.

In contrast, the defendant has highlighted the language of its employee handouts, signed by the plaintiff, which unequivocally and conspicuously states that he was employed at-will and that any terms placed in writing do not constitute a contract. (Def. Reply Ex. A.)  The Court need not discuss the sufficiency of any such disclaimer, insofar as the plaintiff has not identified any basis for a contract in the first instance.

The claim should plainly be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for partial summary judgment [Doc. 40], should be GRANTED in its entirety.  Accordingly, the plaintiff's claims for breach of contract and pursuant to the ADEA, of whatever kind, should be dismissed *with prejudice*.  The plaintiff's claims for discriminatory discharge, pursuant to Title VII and 42 U.S.C. § 1981, should also be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

> s/Bruce Howe  Hendricks
> United States Magistrate Judge

April 5, 2011
Charleston, South Carolina.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).